UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -:
DWINEL MONROE,                        :    16 Civ. 2074 (AJN) (JCF)
                                      :
              Petitioner,             :         REPORT AND
                                      :      RECOMMENDATION
      - against -                     :
                                      :
SUPERINTENDENT B.J. SMITH,            :
                                      :
              Respondent.             :
- - - - - - - - - - - - - - - - - - -:

TO THE HONORABLE ALISON J. NATHAN, U.S.D.J.:

```
┌─────────────────────────────┐
│ USDS SDNY                   │
│ DOCUMENT                    │
│ ELECTRONICALLY FILED        │
│ DOC #:_____             │
│ DATE FILED: 3/8/17          │
└─────────────────────────────┘
```

     Dwinel Monroe, proceeding pro se, seeks a writ of habeas

corpus pursuant to 28 U.S.C. § 2254.  Mr. Monroe is currently

serving a seven-year sentence for attempted robbery in the second

degree.  For the reasons that follow, I recommend that the petition

be denied.

Background

     A.   The Crime

     This prosecution arose out of allegations that the petitioner

and another man attempted to rob Dr. Arvin Moldi in Manhattan in

the early morning hours of April 13, 2011.  Dr. Moldi, a dental

surgeon, was visiting the United States from India with his wife.

(H. at 51-55; Tr. at 108-12).[1]  During their visit to Manhattan,

---

     [1] "H." refers to the transcript of an independent source
hearing held on January 24-25, 2012. (Docket No. 10 & Attachments
1-2).  "Tr." refers to the transcript of the petitioner's trial.
(Docket No. 10, Attachments 3-5).  "P." refers to the transcript
of a Payton hearing held on September 8, 2011.  (Docket No. 10).

they stayed at a Days Inn Hotel on Broadway and West 94th Street. (H. at 55; Tr. at 112).   Mr. Monroe resided at the Camden Hotel, a residential shelter on West 95th Street.   (H. at 8-9, 31; Tr. at 37-38).

Chad Walton, who also resided at the Camden Hotel, observed the crime.  (H. at 6; Tr. at 35, 42).   He had seen Mr. Monroe and his accomplice earlier that evening when they had offered to sell him fruit near the entrance of the Camden at about 10:00 or 11:00 p.m.  (H. at 13-14; Tr. at 42).   Mr. Walton recognized Mr. Monroe from the Camden and from other housing facilities where Mr. Walton had previously resided.   (H. at 7-8, 30-31; Tr. at 38-39).   Mr. Walton and Mr. Monroe both lived at the Camden during the two weeks preceding the attempted robbery.   (H. at 10).   During that time, Mr. Walton saw Mr. Monroe more than once each day in the neighborhood around the Camden and overheard Mr. Monroe complain about not having enough money on numerous occasions, though he never personally spoke to Mr. Monroe and did not know him by name. (H. at 10, 36-37; Tr. at 38-39).

Dr. Moldi testified that at about 12:30 or 1:00 a.m. on April 13, he was returning to his hotel from a visit to Times Square.

---

"Sentencing Tr." refers to the transcript of the petitioner's sentencing hearing held on February 24, 2012.  (Docket No. 10, Attachment 5).   "Voir Dire" refers to the transcript of jury selection held on January 26, 2012.  (Docket No. 10).

(H. at 58; Tr. at 119-20).  Mr. Walton observed Mr. Monroe and his accomplice approach Dr. Moldi on Broadway between 94th and 95th streets.  (H. at 14; Tr. at 43, 120).  Mr. Walton estimated that he was ten to twelve feet away from them.  (H. at 17-18).  Mr. Monroe and his accomplice continued to approach Dr. Moldi and began to walk alongside him at a distance of two to three feet (H. at 59, 62-63; Tr. at 123-24), at which point Mr. Monroe's accomplice stated, "[H]ello, how are you doing?" and asked Dr. Moldi if he was on vacation (H. at 61; Tr. at 123).  Mr. Monroe then asked Dr. Moldi for a dollar to get home.  (H. at 17-18, 61; Tr. at 124-25). Dr. Moldi initially refused, but Mr. Monroe insisted that Dr. Moldi check his wallet.  (H. at 62; Tr. at 125-26).  Dr. Moldi walked under a canopy with the two men and took out his wallet to give them "a couple of dollars."  (H. at 64; Tr. at 126-27).  When Mr. Monroe saw the wallet, he commented that Dr. Moldi "ha[d] a lot of money" (Dr. Moldi estimated that he had about $600).  (H. at 64, 87; Tr. at 127).  In response to Mr. Monroe's comment, Dr. Moldi immediately put the wallet into his back pocket.  (Tr. at 128). Mr. Monroe and his accomplice then attempted "to snatch away" the wallet.  (H. at 64; Tr. at 128).  Mr. Monroe's accomplice held Dr. Moldi's neck from behind while Mr. Monroe, standing in front of Dr. Moldi, tried to take the wallet from Dr. Moldi's pocket,

ripping Dr. Moldi's pants in the process.   (H. at 19-20, 66; Tr. at 46-47, 128-29).

By that time, Mr. Walton had realized that the two men were trying to rob Dr. Moldi and moved closer to the incident.   (H. at 20; Tr. at 47).   Mr. Walton called the police and told Mr. Monroe and his accomplice to "get the hell away from [Dr. Moldi]."   (H. at 20, 66; Tr. at 47).   Mr. Monroe and his accomplice then fled without taking Dr. Moldi's wallet.   (H. at 20-21, 66-67, 95; Tr. at 48, 131).   Mr. Monroe ran in the direction of the Camden.   (Tr. at 48).   The security officer at the front desk of the Camden observed Mr. Monroe enter the building at 1:03 a.m.   (Tr. at 308).

Although the attempted robbery occurred in the middle of the night, the street was well lit, and Dr. Moldi testified that he could see his assailants clearly.   (H. at 63; Tr. at 124).   Dr. Moldi described Mr. Monroe's accomplice as tall, physically fit, and wearing a jacket with the hood up; Dr. Moldi estimated that he was about forty years old.   (H. at 59-60; Tr. at 120-21).   Dr. Moldi described Mr. Monroe as shorter than his accomplice and wearing a jacket and a cap; Dr. Moldi estimated that he was fifty years old.   (H. at 60; Tr. at 120-21).   Mr. Monroe had a black beard flecked with white hairs and was missing some of his upper front teeth.   (H. at 60-61; Tr. at 120-22, 168-71).

The police arrived at the scene shortly thereafter and drove Dr. Moldi to the Camden, where Mr. Walton had told 911 operators that Mr. Monroe lived.  (H. at 21, 67, 98-99; Tr. at 135).  Mr. Walton met Dr. Moldi and the officers outside the Camden, and the group entered the building together.  (H. at 101-02; Tr. at 50).  They proceeded to Mr. Monroe's apartment on the third floor.  (H. at 102-03; Tr. at 174-75).  Mr. Walton and Dr. Moldi waited in the third floor hallway while the officers knocked on Mr. Monroe's door.  (H. at 102-03; Tr. at 65, 174, 204-05, 227-28).  There was no answer, so the officers asked the security officer to open the door with his set of keys, which he did after knocking and announcing himself.  (Tr. at 228-29).

The officers stepped into the apartment and found Mr. Monroe standing behind the open front door.  (Tr. at 229, 242).  They escorted him out of the apartment and brought him over to Mr. Walton and Dr. Moldi for a showup identification.  (Tr. at 174-75).  Mr. Walton stated, "That's the guy," and Dr. Moldi positively identified him as the older of the two men who attempted to rob him.  (H. at 106; Tr. at 175-76).  Dr. Moldi estimated that he was about six feet from Mr. Monroe during the showup and saw him for five or six seconds.  (Tr. at 176).  There was conflicting testimony as to whether Mr. Monroe was handcuffed during the showup.  Dr. Moldi testified that he was (Tr. at 190), and Mr.

Monroe testified that he was arrested and handcuffed in his apartment (P. at 29-30, 37). However, two officers testified that he was not handcuffed until after the showup. (P. at 12, 22).

B.   Procedural History

1.   Indictment

On April 14, 2011, the petitioner was arraigned in New York County Supreme Court on a felony complaint. (Decision and Order ("6/30/11 Order"), People v. Monroe, No. 1989/11, at SR 36 (N.Y. Sup. Ct. June 30, 2011)).[2]  Defense counsel filed a grand jury notice, and the case was adjourned to April 18, 2011. (6/30/11 Order at SR 36).  On April 18, defense counsel withdrew the grand jury notice, and the case was adjourned for arraignment on the indictment on May 3, 2011. (6/30/11 Order at SR 37).  At the May 3 arraignment, the petitioner asserted that his right to testify before the grand jury was violated by counsel's withdrawal of a grand jury notice and indicated that he wanted new counsel. (6/30/11 Order at SR 37).  On May 17, 2011, Anne B. Rudman was assigned to represent the petitioner. (6/30/11 Order at SR 37). She moved to dismiss the indictment pursuant to New York Criminal

_____

[2] "SR" refers to the page numbers in a compilation of state court records filed by the respondent entitled "State Court Records." (Docket No. 9).  Page numbers preceded by "SR" reflect the page numbers in the compilation of records, not those from the individual sources.

6

Procedure Law § 190.50 on the ground that the petitioner was denied the right to testify before a grand jury. (6/30/11 Order at SR 36).

On June 30, 2011, Justice Renee A. White denied the § 190.50 motion on two grounds. First, she found that the prosecution had complied with § 190.50 because the grand jury notice was withdrawn by the petitioner's attorney. (6/30/11 Order at SR 38). Second, she found that the petitioner failed to establish that he was prejudiced by his inability to testify before the grand jury. (6/30/11 Order at SR 38-39).

### 2. Suppression Hearings

On May 31, 2011, Mr. Monroe moved to suppress the identifications by Mr. Walton and Dr. Moldi in the hallway of the Camden on the ground that the showup was unduly suggestive. (Affirmation of Anne B. Rudman at SR 13-14, Monroe, No. 1989/11 (May 31, 2011)). On June 6, 2011, the petitioner moved to suppress those identifications on the additional ground that they were the fruits of an unlawful warrantless arrest in his home in violation of Payton v. New York, 445 U.S. 573 (1980). (Affirmation of Anne B. Rudman at SR 73-74, Monroe, No. 1989/11 (June 6, 2011)). On September 8, 2011, Justice White held a hearing on those motions and suppressed the identifications as the fruits of a Payton

violation but rejected the claim that the showup was unduly suggestive. (P. at 49-50).

On January 24, 2012, Justice Daniel Fitzgerald held a hearing to determine whether Mr. Walton and Dr. Moldi had an independent source -- other than the encounter in the hallway of the Camden -- to identify the petitioner at trial. He concluded that both men did. In Mr. Walton's case, his observation of the attempted robbery and his knowledge of the petitioner from the Camden and other housing facilities was sufficient. (H. at 123-26). In Dr. Moldi's case, his face-to-face interaction with the petitioner during the attempted robbery was adequate. (H. at 132-36). Thus, Justice Fitzgerald held that both men could identify the petitioner at trial. (H. at 136).

### 3.   Trial, Sentencing, and Appeals

A jury trial began before Justice Fitzgerald on January 26, 2012. At trial, the petitioner was represented by Sol Schwartzberg. A significant amount of the evidence concerned the condition of the petitioner's teeth. Dr. Moldi testified that the petitioner was missing three to four of his upper front teeth on the night of the attempted robbery. (Tr. at 170-71). The prosecution introduced photographs of the petitioner's teeth taken on January 17, 2012, approximately one week before trial. (Tr. at 234, 280-82). The photographs are not in the record before this

Court; however, testimony regarding the photographs suggests that the petitioner was missing all of his upper teeth and all but four or five of his bottom teeth. (Tr. at 283). At the conclusion of the trial, Mr. Schwartzberg directed the petitioner to stand up and display his teeth to the jury. (Tr. at 358).

On February 1, 2012, the jury convicted the petitioner of attempted robbery in the second degree. (Tr. at 431-33). Three weeks later, Justice Fitzgerald sentenced the petitioner as a second felony offender to a seven-year term of imprisonment with five years of post-release supervision. (Sentencing Tr. at 5-6).

Mr. Monroe appealed his conviction to the First Department. The petitioner's principal appellate brief asserted that: (1) Dr. Moldi should not have been permitted to identify the petitioner in court because the independent source determination was erroneous and the showup was unduly suggestive; (2) the court violated the petitioner's right to self-representation by failing to inquire into his interest in proceeding pro se; and (3) the sentence was excessive. (Brief for Defendant-Appellant at SR 121-22, People v. Monroe, No. 1989/11 (1st Dep't June 24, 2013)). The petitioner also submitted a supplemental pro se brief arguing that: (1) he was denied the right to testify before the grand jury when counsel withdrew the grand jury notice without his consent; and (2) he received ineffective assistance of counsel because his first

9

attorney withdrew the grand jury notice and because Mr. Schwartzberg was allegedly intoxicated during trial. (Brief for Defendant-Appellant ("Pet. 1/24/14 Memo.") at SR 154, <u>Monroe</u>, No. 1989/11 (1st Dep't Jan. 24, 2014)). The Appellate Division affirmed the conviction. It declined to review the petitioner's ineffective assistance of counsel claims because they involved matters outside the record and rejected his remaining claims on the merits. <u>People v. Monroe</u>, 132 A.D.3d 426, 426-27, 17 N.Y.S.3d 292, 293 (1st Dep't 2015). The New York Court of Appeals denied leave to appeal. <u>People v. Monroe</u>, 26 N.Y.3d 1090, 1090, 23 N.Y.S.3d 647 (2015) (Table).

    C.   <u>The Federal Habeas Corpus Petition</u>

The petitioner seeks relief from his conviction and sentence pursuant to 28 U.S.C. § 2254 on the following grounds: (1) violation of his right to testify before the grand jury; (2) violation of his Fourth Amendment rights when the police arrested him in his home; (3) ineffective assistance of counsel at several stages of the prosecution; (4) violation of his due process rights because Dr. Moldi did not have an independent source for identifying him at trial and because the showup was unduly suggestive; and (5) violation of his Sixth Amendment right to self-representation.

<u>Discussion</u>

    A.   <u>Legal Standards</u>

       1.   <u>Principles Governing Petitions Under Section 2254</u>

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant a writ of habeas corpus to a state prisoner for a claim that a state court has adjudicated on the merits only where the state court's adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Federal law is "clearly established" when it is expressed in "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions." <u>Howes v. Fields</u>, 565 U.S. 499, 505 (2012) (quoting <u>Williams v. Taylor</u>, 529 U.S. 362, 412 (2000)). Habeas relief is not available when a petitioner raises an issue that the Supreme Court has not squarely addressed or clearly answered." <u>Wright v. Van Patten</u>, 552 U.S. 120, 125-26 (2008).

A state court's decision is "contrary" to clearly established federal law when the state court "applies a rule that contradicts the governing law set forth" in a Supreme Court opinion, or when

it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent." <u>Williams</u>, 529 U.S. at 405-06. A decision is an unreasonable application of clearly established law when "the state court correctly identifies the governing legal principle . . . but unreasonably applies it to the facts of the particular case." <u>Bell v. Cone</u>, 535 U.S. 685, 694 (2002). Habeas relief should be granted on this prong only where there is "no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents." <u>Harrington v. Richter</u>, 562 U.S. 86, 102 (2011).

Separately, but importantly, a <u>pro se</u> habeas petition must be construed liberally to include any colorable legal claim and the strongest arguments it suggests. <u>Parisi v. United States</u>, 529 F.3d 134, 139 (2d Cir. 2008); <u>Mears v. Graham</u>, No. 13 Civ. 8737, 2014 WL 4060022, at *1 (S.D.N.Y. Aug. 14, 2014).

2.   <u>Exhaustion and Procedural Default</u>

A habeas petitioner must exhaust all available state remedies for each of his claims prior to federal review. 28 U.S.C. § 2254(b)(1)(A); <u>Duckworth v. Serrano</u>, 454 U.S. 1, 3 (1981). For a claim to be exhausted, a petitioner must utilize "all available mechanisms to secure appellate review of the denial of that claim."

Klein v. Harris, 667 F.2d 274, 282 (2d Cir. 1981).  That requires the petitioner "to invoke 'one complete round of the State's established appellate review process.'"  Galdamez v. Keane, 394 F.3d 68, 74 (2d Cir. 2005) (quoting O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999)).  In general, to properly exhaust a claim in New York, the petitioner must first "fairly present[]" it to the Appellate Division and then "seek further review . . . by applying to the Court of Appeals for a certificate granting leave to appeal." Id. at 73-74 (emphasis omitted) (quoting O'Sullivan, 526 U.S. at 848).  However, a district court has discretion to reach the merits of an unexhausted claim to deny the petition.  28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.");  see also Lurie v. Wittner, 228 F.3d 113, 124 (2d Cir. 2000).

"When a petitioner can no longer 'present his unexhausted claim of trial error to the state courts, we deem the claim procedurally [defaulted].'" Richardson v. Superintendent of Mid-Orange Correctional Facility, 621 F.3d 196, 201 (2d Cir. 2010) (quoting Acosta v. Artuz, 575 F.3d 177, 188 (2d Cir. 2009)).  "In such cases, the district court may deem the claims to be exhausted, but they are nonetheless procedurally barred from habeas review." Fields v. Lee, No. 12 Civ. 4878, 2016 WL 889788, at *8 (S.D.N.Y.

Jan. 28, 2016).  The merits of a procedurally defaulted claim may not be reviewed by a federal court unless the petitioner shows (1) cause for the default and actual prejudice resulting therefrom or (2) that he is "actually innocent" of the crime for which he was convicted.  Murray v. Carrier, 477 U.S. 478, 495-96 (1986).

The "cause" prong of the cause-and-prejudice test ordinarily requires a showing that "some objective factor external to the defense impeded counsel's efforts to comply with the [] procedural rule."  Id. at 488.  Cause may be found, for example, where ineffective assistance of counsel or interference by government officials prevented the petitioner from complying with the procedural rules.  See Jones v. Armstrong, 367 F. App'x 256, 257 (2d Cir. 2010); United States v. Friedland, Nos. 10 Cr. 827, 13 Civ. 8312, 2015 WL 4469513, at *2 (S.D.N.Y. July 16, 2015).  The "prejudice" prong requires that the defendant suffer "'actual prejudice' resulting from the errors of which he complains." United States v. Frady, 456 U.S. 152, 168 (1982)).  The petitioner must show that the errors at trial created an "actual and substantial disadvantage, infecting [the] entire trial with error of constitutional dimensions."  Rosario-Dominguez v. United States, 353 F. Supp. 2d 500, 508 (S.D.N.Y. 2005) (quoting Frady, 456 U.S. at 170).

14

A petitioner may also overcome a procedural default by showing "actual innocence." Murray, 477 U.S. at 488; Friedland, 2015 WL 4469513, at *2. "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." Bousley v. United States, 523 U.S. 614, 623 (1998). "To establish actual innocence, [the] petitioner must demonstrate that . . . 'it is more likely than not that no reasonable juror would have convicted him.'" Id. (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)).

### 3.   Ineffective Assistance of Counsel

To prevail on an ineffective assistance of counsel claim, a criminal defendant must show that (1) "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" and (2) "the deficient performance prejudiced the defense." Strickland v. Washington, 466 U.S. 668, 687 (1984). "[C]ounsel is strongly presumed to have rendered adequate assistance . . . ." Id. at 690. As a result, "[s]urmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371 (2010).

A showing of deficient performance requires the defendant to prove that "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 687-88.

> Judicial scrutiny of counsel's performance must be
> highly deferential. . . . A fair assessment of attorney
> performance requires that every effort be made to

> eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.  Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . .

Id. at 689.  To show that the deficient performance prejudiced the outcome, the defendant must establish that the "likelihood of a different result must be substantial, not just conceivable." Harrington, 562 U.S. at 112.  Where a defendant has made an insufficient showing with regard to one element of the Strickland standard, the court need not address the other.  Strickland, 466 U.S. at 697.

   B.   "Mixed" Petition

      1.   The Petitioner's Claims

   The petitioner brings what is known as a "mixed" petition in that he presents both exhausted and unexhausted claims.  See Rhines v. Weber, 544 U.S. 269, 273 (2005).  The unexhausted claims involve ineffective assistance of counsel.  The petitioner asserts ineffective assistance of counsel at three stages of the prosecution: (1) when Matthew Knecht, his attorney during pre-indictment proceedings, withdrew the grand jury notice without his consent; (2) when Ms. Rudman, who was assigned to replace Mr. Knecht, failed to explain how he was prejudiced by the withdrawal

of the grand jury notice in her § 190.50 motion; and (3) when Sol Schwartzberg, his trial attorney, was allegedly intoxicated at trial, misled him about trial tactics, and directed him to display his teeth to the jury without introducing medical records showing that his teeth had been removed while he was in jail awaiting trial in this case.

In New York, the appropriate procedural vehicle to bring an ineffective assistance of counsel claim after a conviction at trial depends on whether the trial record is sufficiently developed to challenge counsel's performance on direct appeal. "[T]he proper means to obtain review of an ineffective assistance of counsel claim based on facts outside the record is a motion to vacate pursuant to New York Criminal Procedure Law § 440.10." Ortiz v. Artuz, No. 06 Civ 6444, 2010 WL 3238994, at *4 (S.D.N.Y. Aug. 11, 2010); see also Pierotti v. Walsh, 834 F.3d 171, 178 (2d Cir. 2016) ("[W]here . . . an ineffective assistance of counsel claim turns on facts that are outside of the trial-court record, the claim must be brought in collateral proceedings, not on direct appeal."). When a petitioner raises such a claim in a federal habeas proceeding before doing so in state court on a § 440.10 motion, the claim is unexhausted because the petitioner has not "exhausted the remedies available in the courts of the State." Ortiz, 2010 WL 3238994, at *4 (quoting Polanco v. Ercole, No. 06 Civ. 1721,

2007 WL 2192054, at *7 (S.D.N.Y. July 31, 2007)).  The claim is not procedurally defaulted, however, because a § 440.10 motion may be brought "[a]t any time after the entry of judgment." N.Y. Crim. Proc. Law § 440.10(1).

On the other hand, an ineffective assistance of counsel claim based solely on facts within the record must be brought on direct appeal.  See N.Y. Crim. Proc. Law § 440.10(2)(c); Roldan v. Ercole, No. 08 Civ. 6548, 2009 WL 2191176, at *6 (S.D.N.Y. July 20, 2009) ("[R]elief pursuant to CPL § 440.10 is not available where the claims could have been raised on the appeal because the record was sufficiently developed . . . .").  Such a claim is procedurally defaulted when it is not brought on direct appeal and is therefore barred from federal habeas review absent a showing of cause and prejudice or actual innocence.  Sweet v. Bennett, 353 F.3d 135, 139-40 (2d Cir. 2003).

Here, the petitioner raised ineffective assistance of counsel on direct appeal only with respect to Mr. Knecht's withdrawal of the grand jury notice and Mr. Schwartzberg's alleged intoxication at trial.  (Pet. 1/24/14 Memo. at SR 159-64).  The First Department declined to review those claims because they involved facts outside the record -- namely, the content of private conversations between the petitioner and Mr. Knecht and evidence of Mr. Schwartzberg's intoxication -- and suggested that a § 440.10 motion was the

appropriate vehicle to raise those claims. Monroe, 132 A.D.3d at 427, 17 N.Y.S.3d at 293. The petitioner's other ineffective assistance of counsel claims concerning Mr. Schwartzberg's conduct also involve facts outside the trial record. Whether Mr. Schwartzberg misled the petitioner about trial tactics concerns the content of private conversations between them, and whether there are medical records showing that the petitioner had a dental procedure in jail involves a search of those records. The petitioner has yet to bring a § 440.10 motion on any of these ineffective assistance of counsel claims. Therefore, they are unexhausted but not procedurally defaulted.

The rest of the petitioner's claims are exhausted. The petitioner's ineffective assistance of counsel claim concerning Ms. Rudman's § 190.50 motion was not raised on direct appeal. Unlike the petitioner's other ineffective assistance claims, it is based solely on facts within the record -- whether the motion she submitted to the trial court was deficient. Accordingly, this claim is deemed exhausted by virtue of procedural default.

The petitioner's Payton claim was also not raised on direct appeal. This claim is deemed exhausted by virtue of procedural default. His remaining claims -- violation of his right to testify before the grand jury, erroneous independent source and suggestiveness determinations regarding the showup, and violation

19

of his right to self-representation -- were raised on appeal and are therefore exhausted.  Thus, the petition is mixed, as it raises both exhausted and unexhausted claims.

 2.   Disposition of Mixed Petition

In Rose v. Lundy, the Supreme Court held that a federal district court may not adjudicate a mixed petition because "it would be unseemly . . . for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation."  455 U.S. 509, 518 (1982) (quoting Darr v. Burford, 339 U.S. 200, 204 (1950), overruled on other grounds by Fay v. Noia, 372 U.S. 391 (1963)).  Lundy directed district courts to dismiss mixed petitions without prejudice, permitting petitioners to go to back to state court to exhaust their unexhausted claims and then return to federal court once their claims are fully exhausted.  Id. at 518-19.

However, a district court may also deny unexhausted claims on the merits if those claims are "plainly meritless."  28 U.S.C. § 2254(b)(2); Bravo v. Unger, No. 10 Civ. 5659, 2014 WL 201472, at *2 (S.D.N.Y. Jan. 16, 2014); Williams v. Artus, 691 F. Supp. 2d 515, 526 (S.D.N.Y. 2010).  Here, all of the petitioner's unexhausted ineffective assistance of counsel claims are plainly meritless.  After a discussion of the unexhausted claims, I will review the petitioner's exhausted claims.

C.    Unexhausted Ineffective Assistance of Counsel Claims

1.    Withdrawal of Grand Jury Notice

The petitioner's claim that Mr. Knecht's withdrawal of the grand jury notice constituted ineffective assistance of counsel is plainly meritless because his conviction at trial cured any deficiency in the grand jury proceedings.  As the Supreme Court explained in connection with federal grand jury proceedings in United States v. Mechanik,

> [T]he petit jury's subsequent guilty verdict means not only that there was probable cause to believe that the defendants were guilty as charged, but also that they are in fact guilty as charged beyond a reasonable doubt. Measured by the petit jury's verdict, then, any error in the grand jury proceeding connected with the charging decision was harmless beyond a reasonable doubt.

475 U.S. 66, 70 (1986).  Therefore, the petitioner cannot show that the withdrawal of the grand jury notice prejudiced the outcome of his trial under Strickland's second prong.  Accordingly, this claim is plainly meritless and should be denied.

2.    Intoxication and Misrepresentation of Trial Tactics

Mr. Monroe's claims that Mr. Schwartzberg was intoxicated at trial and misled him about trial tactics are conclusory and wholly unsubstantiated.  The petitioner provides no evidence that Mr. Schwartzberg was intoxicated, and a review of the trial transcript, at which he cross-examined several witnesses and delivered opening and closing statements, reveals no indication of impairment.

21

Similarly, the claim that Mr. Schwartzberg misled the petitioner about trial tactics is bereft of any detail regarding the tactics at issue, the alleged misrepresentations, or how those misrepresentations might have prejudiced the outcome of the trial. A district court may deny unexhausted claims as plainly meritless when they are based solely on vague or conclusory assertions. See Owens v. Conway, No. 10 Civ. 3183, 2010 WL 3290980, at *2 (S.D.N.Y. Aug. 11, 2011) (denying unexhausted claims in mixed petition because the "conclusory allegations . . . fail[ed] to allege enough facts to state claims that [were] plausible on their face"); Pettus v. McGinnis, No. 06 Civ. 2054, 2006 WL 2662086, at *1 (S.D.N.Y. Sept. 15, 2006) (denying unexhausted claim in mixed petition where the "petitioner offer[ed] no facts whatever to bear out his assertion that the prosecutor intentionally presented unspecified false evidence at trial"). Accordingly, both of these claims should be denied.

### 3.   Displaying the Petitioner's Teeth to the Jury

The claim that Mr. Schwartzberg provided ineffective assistance of counsel by directing the petitioner to display his teeth to the jury without introducing records that his teeth were removed while he was in jail awaiting trial in this case is plainly meritless because the introduction of such records would have undermined the petitioner's defense. As Mr. Schwartzberg

22

explained in his summation, the purpose of having the petitioner display his teeth to the jury was to highlight a discrepancy between Dr. Moldi's description of the petitioner's teeth and photographs of his teeth taken on January 17, 2012. (Tr. at 372). Dr. Moldi described the petitioner as missing three to four of his upper front teeth on the night of the attempted robbery (Tr. at 171), while the January 17 photographs showed that he had no upper teeth and only four or five bottom teeth (Tr. at 283). Records showing that the petitioner's teeth were removed while he was awaiting trial would have reconciled that discrepancy. Therefore, Mr. Schwartzberg's decision to display the petitioner's teeth to the jury without introducing such records was not objectively unreasonable or prejudicial under <u>Strickland</u>. This claim is plainly meritless and should be denied.

     D.   <u>Exhausted Claims</u>

         1.   <u>Grand Jury Claim</u>

The petitioner argues, independent of his ineffective assistance of counsel claim concerning the withdrawal of the grand jury notice, that his right to testify before the grand jury was violated. (Petition under 28 U.S.C. § 2254 For Writ of Habeas Corpus by a Person in State Custody ("Petition") at 5-6). This claim should be denied because it is not cognizable in a federal habeas proceeding. A federal habeas court "may only overturn a

state conviction when that conviction was obtained in violation of a federal constitutional right." Lemons v. Parrott, No. 01 Civ. 9366, 2002 WL 850028, at *5 (S.D.N.Y. May 2, 2002) (quoting Einaugler v. Supreme Court of the State of New York, 109 F.3d 836, 842 (2d Cir. 1997)). However, "the Fifth Amendment's grand jury guarantee does not extend to the states." Fields v. Soloff, 920 F.2d 1114, 1118 (2d Cir. 1990); see also Campbell v. Poole, 555 F. Supp. 2d 345, 378 (W.D.N.Y. 2008) ("The Fifth Amendment right to be tried for a felony only upon a grand jury indictment was not incorporated by the Due Process Clause of the Fourteenth Amendment, and therefore does not pertain to the states."). Accordingly, the right to testify before a grand jury is "a right created by state law alone" and is "non-cognizable in a federal habeas proceeding."[3] Gibbs v. New York, 01 Civ. 5046, 2002 WL 31812682, at *4 (S.D.N.Y. Dec. 12, 2002). This claim rests solely on that right and should be denied.

### 2.   Ms. Rudman's § 190.50 Motion

The claim that Ms. Rudman provided ineffective assistance of counsel by failing to raise an argument about prejudice in her §

---

[3] In New York, the right to be tried for a felony only after indictment by a grand jury derives from the New York Constitution, N.Y. Const. art. I, § 6, and the right to testify before a grand jury is grounded in state statute, N.Y. Crim. Proc. Law § 190.50(5)(a).

190.50 motion was not raised on direct appeal and is therefore procedurally defaulted. The petitioner does not allege cause and prejudice or actual innocence to overcome this procedural default, and no excuse for the procedural default is otherwise apparent in the record. Even if not procedurally barred, this claim would fail on the merits. As discussed earlier, the petit jury's finding of guilt beyond a reasonable doubt cured any deficiency in the grand jury proceeding. Thus, the petitioner cannot show that Ms. Rudman's conduct prejudiced the outcome of his trial under Strickland's second prong, and this claim should be denied.

### 3.  Fourth Amendment Claim

The petitioner argues that his arrest in his home in violation of Payton mandated dismissal of the indictment, not just suppression of the identifications in the hallway of the Camden. (Petition at 8). Federal habeas relief is not available on a Fourth Amendment claim "where the State has provided an opportunity for full and fair litigation of [the] claim." Stone v. Powell, 428 U.S. 465, 482 (1976); see also Capellan v. Riley, 975 F.2d 67, 70 (2d Cir. 1992). Under this standard, there are only two instances in which review of a Fourth Amendment claim will be granted: (1) "if the state has provided no corrective procedures at all to redress the alleged fourth amendment violations"; or (2) "if the state has provided a corrective mechanism, but the

25

defendant was precluded from using that mechanism because of an unconscionable breakdown in the underlying process." Capellan, 975 F.2d at 70.

It is well-established that New York's corrective procedures for litigating Fourth Amendment claims under Criminal Procedure Law § 710.10 et seq. are constitutionally adequate. Id. at 70 n.1; Hayes v. Lee, No. 11 Civ. 1365, 2015 WL 5943677, at *8 n.10 (S.D.N.Y. Oct. 13, 2015). Therefore, the petitioner must assert that there was an unconscionable breakdown in the state process for his Fourth Amendment claim to be cognizable in this proceeding.

No such breakdown is apparent in this case. The petitioner raised the Fourth Amendment issue to the trial court, which granted relief in the form of suppression of the identifications that resulted from the unlawful arrest. He did not seek additional relief on appeal, and he does not allege that an unconscionable breakdown in the state process precluded him from doing so. To the extent that he asserts that the failure to seek further relief on appeal was the result of ineffective assistance of appellate counsel, such a claim does not constitute an "unconscionable breakdown" in the state process.[4] See Hayes, 2015 WL 5943677, at

---

[4] Even if ineffective assistance of counsel could establish an unconscionable breakdown in the state process, such a claim would lack merit. Suppression of the fruits of a Payton violation, not dismissal of the indictment, is generally the appropriate

26

*8 n.10 ("Petitioner's claim of ineffective assistance of counsel in connection with his Fourth Amendment claim, 'as a matter of law,' cannot 'constitute an unconscionable breakdown.'" (quoting Irizarry v. Ercole, No. 08 Civ. 5884, 2013 WL 139638, at *5 n.4 (S.D.N.Y. Jan. 11, 2013))).   Nothing in the record otherwise indicates any breakdown in the state's corrective procedures. Accordingly, this claim is barred from review in a federal habeas proceeding.[5]

### 4.   Independent Source and Unduly Suggestive Showup

The petitioner contends that Dr. Moldi should not have been permitted to identify him in court for two reasons: (1) the determination that Dr. Moldi had an independent source for the identification was erroneous; and (2) the showup in the hallway of the Camden was unduly suggestive.   The petitioner raised these

---

remedy for a Payton violation.   See People v. Box, 145 A.D.3d 1510, 1515, 44 N.Y.S.3d 645, 649 (4th Dep't 2016) ("Even assuming [] that [the] defendant was arrested in his home without a warrant in violation of Payton, we recognize that the remedy for such a violation would not be dismissal of the indictment but, rather, suppression of any evidence obtained from [the] defendant following that violation . . . .").   That remedy was granted at trial.   Thus, the petitioner would be unable to show that counsel's failure to raise the claim on appeal created a substantial likelihood of prejudicing the outcome of his appeal.

[5] Even if the claim were cognizable in this proceeding, it would be barred by procedural default.   The petitioner did not raise the claim on direct appeal, and he does not assert cause and prejudice or actual innocence to excuse the default.

claims on appeal.  The First Department held that "notwithstanding a suppressed identification procedure, [Dr. Moldi] had an independent source for his identification of [the petitioner]" and that the showup identification, "which had been suppressed solely on Fourth Amendment grounds, was not unduly suggestive." Monroe, 132 A.D.3d at 426, 17 N.Y.S.2d at 293.

### a.   Independent Source

Where a witness identification is the result of an unlawful procedure, such as a Payton violation, the witness may still identify the defendant in court if the prosecution establishes by clear and convincing evidence that the witness has an independent source for making an in-court identification. United States v. Wade, 388 U.S. 218, 239-40 (1967); Young v. Conway, 698 F.3d 69, 78 (2d Cir. 2012). The Supreme Court applies six factors to determine if there is such an independent source: (1) the victim's prior opportunity to observe the alleged criminal act; (2) the discrepancy between any pre-showup description and the defendant's actual description; (3) any identification prior to the showup of another person; (4) a photographic identification of the defendant prior to the illegal showup; (5) the victim's failure to identify the defendant on a prior occasion; and (6) the lapse of time between the alleged act and the showup identification. United States v. Crews, 445 U.S. 463, 473 n.18 (1980); Wade, 388 U.S. at

241; see also Massillon v. Conway, 574 F. Supp. 2d 381, 384 (S.D.N.Y. 2008).

The first factor weighs in favor of the state court's independent source determination. Dr. Moldi interacted with the petitioner for several minutes before and during the attempted robbery. When the petitioner and his accomplice began to speak to Dr. Moldi, he was looking at the petitioner at a distance of two to three feet. (H. at 63, 85). Dr. Moldi "talked directly" with the petitioner a second time when the group went under an awning and the petitioner asked Dr. Moldi for a dollar. (H. at 64). When the attempted robbery began, Dr. Moldi was again looking at the petitioner's face as he tried to grab the wallet from Dr. Moldi's pocket. (H. at 66). It is also noteworthy here that Dr. Moldi testified that he observed the petitioner's most distinctive feature -- his missing upper front teeth -- during the interaction. (H. at 61-62). Though the incident occurred in the middle of the night while it was drizzling (H. at 64), both Dr. Moldi and Mr. Walton testified that the street was well lit (H. at 15, 63). Therefore, the first factor supports the determination that Dr. Moldi had an independent source to identify the petitioner in court.

The sixth factor also supports the state court's independent source determination. Significant delay between the crime and the

pre-trial identification is a "'seriously negative factor' weighing against independent reliability 'in most cases.'" <u>Young</u>, 698 F.3d at 84 (quoting <u>Neil v. Biggers</u>, 409 U.S. 188, 201 (1972)). In this case, the showup occurred on the same night as the attempted robbery -- Dr. Moldi estimated that it was just ten minutes later. (H. at 68).

The remaining factors do not weigh strongly in either direction. As to the second factor, there was no testimony at the independent source hearing that Dr. Moldi described the petitioner to anyone else prior to the showup. As to the third, Dr. Moldi did not identify anyone else prior to the showup. As to the fourth, Dr. Moldi was not asked to make a photographic identification of the petitioner prior to the showup. As to the fifth, Dr. Moldi made no prior attempt to identify the petitioner.

Accordingly, the state court's independent source determination was not contrary to or an unreasonable application of clearly established law.

b.   <u>Unduly Suggestive Showup</u>

The petitioner contends that the showup was unduly suggestive because he was brought out of his apartment in handcuffs.[6]   The

---

[6] For the purposes of evaluating this claim, I assume, without deciding, that the petitioner was in fact handcuffed when he was escorted out of his apartment.  As noted earlier, there was conflicting testimony on this point.

Supreme Court has not addressed whether such circumstances are <u>per se</u> unduly suggestive.   Lower courts have generally held that viewing a defendant escorted by officers in handcuffs is not unduly suggestive.   <u>See, e.g.</u>, <u>De Michele v. City of New York</u>, No. 09 Civ. 9334, 2012 WL 4354763, at *11 (S.D.N.Y. Sept. 24, 2012) (showup where defendant was handcuffed in back of police car was not unduly suggestive); <u>Charlemagne v. Goord</u>, No. 05 Civ. 9890, 2008 WL 2971768, at *12 (S.D.N.Y. June 30, 2008) (showup where petitioner was in handcuffs and accompanied by police officers was not unduly suggestive), <u>report and recommendation adopted</u>, 2011 WL 2150646 (S.D.N.Y. May 31, 2011); <u>People v. Tramble</u>, 60 A.D.3d 443, 443, 875 N.Y.S.2d 28, 29 (1st Dep't 2009) (showup not suggestive where defendant was in handcuffs and guarded by officers). Therefore, the state court's determination that the showup was not unduly suggestive was not contrary to or an unreasonable application of clearly established law.

Even if the showup was unduly suggestive, an identification resulting from such a showup is not itself a constitutional violation.   Rather, "the constitutional violation is that [the petitioner's] right to a fair trial was impaired by the admission of testimony regarding the unreliable identification." <u>Wray v. City of New York</u>, 490 F.3d 189, 193 (2d Cir. 2007).   Accordingly, a witness who identified a defendant in an unduly suggestive showup

may still identify him in court if the in-court identification is independently reliable.  Raheem v. Kelly, 257 F.3d 122, 133 (2d Cir. 2001) (citing Manson v. Brathwaite, 432 U.S. 98, 114 (1977), and Neil, 409 U.S. at 199).  The independent reliability analysis consists of five factors that overlap substantially with those in the independent source determination:

> the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of [the witness'] prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation.  Against these factors is to be weighed the corrupting effect of the suggestive identification itself.

Manson, 432 U.S. at 114.

As with the independent source analysis, these factors either support the independent reliability of the in-court identification or do not weigh strongly in either direction.[7]  Meanwhile, the

---

[7] The first and fifth factors support admissibility of the in-court identification just as the first and sixth factors in the independent source analysis did.  The second factor cuts both ways. While Dr. Moldi was likely frightened during the attempted robbery, his multiple face-to-face interactions with the petitioner and detailed descriptions of the petitioner's facial features suggest that he was attentive to the petitioner's identity during the incident, gleaning more information than he could have solely from the showup.  The third factor does not weigh for or against independent reliability since Dr. Moldi made no pre-showup description of the petitioner.  The fourth factor supports independent reliability because Dr. Moldi testified that he was "confident" in his showup identification of the petitioner (H. at 68), a fact corroborated by a police officer's testimony that Dr.

corrupting influence of the showup was minimal. It was brief, lasting only a few seconds, and occurred just minutes after the attempted robbery. Therefore, even if the showup procedures were unduly suggestive, Dr. Moldi's in-court identification was independently reliable.

Finally, the petitioner argues that Dr. Moldi "did not remember anything the first day of the independent source hearing" and then became an "expert witness after going over the case with the [district attorney]." (Petition at 11). Nothing in the record supports this assertion. Therefore, the petitioner's claims of error regarding an independent source for Dr. Moldi's in-court identification of the petitioner and the suggestiveness of the showup should be rejected.

### 5.   Right to Self-Representation

The petitioner's final claim is that the trial court violated his right to self-representation by failing to inquire into his interest in proceeding pro se. The right to counsel in the Sixth Amendment implies the correlative right to self-representation. Faretta v. California, 422 U.S. 806, 821 (1975). That right "attaches only if it is asserted 'clearly and unequivocally.'"

---

Moldi was "shaking his head up and down" during the showup (P. at 12).

Wilson v. Walker, 204 F.3d 33, 37 (2d Cir. 2000) (quoting Faretta, 422 U.S at 835).

On January 25, 2015, shortly after the conclusion of the independent source hearing, defense counsel told the court that "the defendant has voiced at times an indication that he may want to act as his own counsel." (H. at 140). The court acknowledged that this was the petitioner's "absolute right" and stated that if the petitioner wished to represent himself, "I have to do a probing, searching questioning of him on that . . . . Does he want to do this or not?" (H. at 140-41). Defense counsel explained that "at this moment, he's advised me that he wants me to pick the jury," but "after the selection of [the] jury and the starting of the case, he's indicated to me that he may want to represent himself." (H. at 141-42). The court responded that if he "shifts from may to want to, you let me know . . . . I certainly will let him represent himself if I'm satisfied of that after a probing analysis." (H. at 142).

Defense counsel represented the petitioner during jury selection, which concluded on January 26, 2012. Defense counsel then reminded the court that "at the beginning of this case I indicated the defendant had advised me . . . he was considering acting as his own attorney." (Voir Dire at 65). Defense counsel noted that he and the petitioner had privately discussed "what

limitations [] the court [will] impose upon him if I am the
attorney or he's the attorney." (Voir Dire at 66). He then asked
the court to "give its views" about "the limitations, the format
and the procedure" if the petitioner represented himself. (Voir
Dire at 66).

The court explained that "[t]he standard rules would apply,"
such as "the rules of evidence." (Voir Dire at 66). While the
petitioner would be allowed to confer with defense counsel to, for
example, receive "suggestions on certain witnesses" (Voir Dire at
66), the court explained that "it's not a tag team. It's not both
of you there as co-counsel." (Voir Dire at 67). The court then
described the benefits of defense counsel's "expertise" and
persuasive skills. (Voir Dire at 67-69). At the conclusion of
the court's remarks, defense counsel stated that "I think he just
advised me that he wants me[] to continue as his attorney." (Voir
Dire at 69).

There is thus no clear and unequivocal invocation of the right
to proceed pro se on the record. To the contrary, Mr. Monroe
expressed his decision to continue with counsel. Therefore, the
petitioner's claim that the trial court violated his right to self-
representation should be denied.

Conclusion

    For the reasons discussed above, I recommend that the petition be denied.  Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days to file written objections to this Report and Recommendation.  Such objection shall be filed with the Clerk of the Court, with extra copies delivered to the Chambers of the Honorable Alison J. Nathan, Room 2102, 40 Foley Square, New York, New York 10007, and to the Chambers of the undersigned, Room 1960, 500 Pearl Street, New York, New York 10007.  Failure to file timely objections will preclude appellate review.

    Respectfully submitted,

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated:   New York, New York
       March 8, 2017

Copies mailed this date to:

Dwinel Monroe
12-R-0759
Greene Correctional Facility
P.O. Box 8
Coxsackie, NY 12051-0008

Priscilla Steward, Esq.
Assistant Attorney General
120 Broadway
New York, NY 10271